# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br>CHRISTOPHER ALTON JEROME<br>LA'DESION RILEY<br>DARIUS DUGAS<br>SASHONDRA DUGAS<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  22-mj-2156<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 6, 2022  in the county of  Davidson  in the  Middle  District of  Tennessee , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code Section 2113(a) | Bank Robbery |

This criminal complaint is based on these facts:

See Attached statement in support of complaint

☑ Continued on the attached sheet.

/s/ Tracy Gordon
*Complainant's signature*

SA Tracy Gordon FBI
*Printed name and title*

Sworn to me remotely by telephone, in compliance with Fed. R. Crim. P. 4.1.

Date:  06/07/2022

*Judge's signature*

City and state:  Nashville, Tennessee    Hon. Jeffery S. Frensley, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A COMPLAINT

I, Tracy Gordon, upon being sworn under oath, state the following:

1. I am a Special Agent with Federal Bureau of Investigation ("FBI") Violent Crime Task Force. As an FBI Special Agent, I am charged with the duty of investigating violations of the United States Code and collecting evidence in matters in which the United States is or may be a party of interest. As a member of the Violent Crimes Task Force, I am currently charged with investigating violent crimes, which includes violations of 18 U.S.C. § 2113(a), the offense of Bank Robbery. I have been investigating violent crime, including bank robberies, for the Federal Bureau of Investigation, since August 2020.

2. I make this affidavit in support of a Criminal Complaint for the arrest of Christopher Alton JEROME, La'Desion RILEY, Darius DUGAS, and Sashondra DUGAS for the offense of Bank Robbery in violation of Title 18, United States Code Section 2113(a).

3. I make this statement, in part, on personal knowledge based on my direct participation in this investigation, and, in part, upon information learned during the course of this investigation from other sources. I am familiar with the facts and circumstances of this matter and the assertions made in this affidavit are based on first-hand knowledge or information received during the course of the investigation. Unless otherwise noted, the referenced information was provided by a person who may have direct or hearsay knowledge of the statement. Except where indicated, all statements referred to below are set forth in substance and in part, rather than verbatim.

4. On June 6, 2022, at approximately 10:37 a.m., officers with Metro Nashville Police Department ("MNPD") responded to the Bank of America ("BOA") branch, located at 645

Thompson Lane, in Nashville, Tennessee, which is within the Middle District of Tennessee, in relation to a robbery of an Automatic Teller Machine ("ATM") and in the presence of the ATM repairman. Bank of America is a bank whose deposits are insured by the Federal Deposit Insurance Corporation.

5. Upon their arrival, MNPD officers located and interviewed the ATM repairman, identified as being "C.C."[1]. C.C. was dispatched to the aforementioned BOA branch to repair an ATM in lane 2. At the time of this robbery, C.C. had already begun his repair on the ATM and had opened the ATM for this purpose thereby exposing the cash cassettes inside.

6. While C.C. was repairing the ATM, he was approached by an unknown black male ("Robber #1") who said something to the effect of: "You have a family, don't look at me". C.C. took this statement to be a threat that if he looked at the robber, C.C. would be hurt or killed by the robber. Concurrently, a second robber ("Robber #2"), approached C.C. from behind and C.C. felt something being placed to his back. C.C. later stated that the was concerned that the item he felt being placed at his back was a firearm or other kind of weapon and that it could be used against him if he attempted to interfere with or thwart the robbery in any way. Realizing that he was being robbed, and in fear of his safety, C.C. complied with the robbers' desires and stepped away from the ATM.

7. C.C. told investigators that the robbers removed the cash cassettes from the ATM and placed them in a nearby gray, four-door sedan. Law enforcement later determined that the cassettes contained money that was in the care, custody, control, management, and possession of BOA. After taking the cash cassettes, the robbers entered the gray, four-door sedan and exited the bank parking lot onto Sidco Drive. C.C. later stated that the robbers were stuck in traffic on Sidco

---

[1] C.C. is a real person whose identity is known to me but whose name is redacted because he is a victim of crime and in anticipation of this complaint becoming public.

Drive, which allowed him to text his supervisor the license plate on the robbery vehicle, identified as being JAY2102.

8. The cash loss from this ATM robbery was estimated by BOA officials to be approximately $125,000.

9. A review of the BOA surveillance confirmed that a gray, four-door sedan pulled up to the ATM next to the one that C.C. was repairing immediately before the robbery. The driver, the aforementioned Robber #1 who was wearing a white hoodie, exited the sedan and approached the ATM while the passenger, Robber #2 who was wearing a black hoodie, approached C.C. from the back. The video showed that the robbers placed the cash cassettes in the gray sedan after taking them from the presence of C.C. Robber #1 entered the driver seat of the gray, four-door sedan and Robber #2 also entered the sedan; the sedan then left the area of the ATM. A red Jeep was seen at a different BOA ATM during this robbery. This red Jeep followed the gray four door sedan out of the BOA parking lot immediately after the robbery.

10. The aforementioned license plate of JAY2102 was queried via law enforcement databases and only one hit was identified. This hit was to North Carolina license plate JAY2102 which is listed as a 2021 Hyundai Elantra belonging to Hertz Rental Company.

11. Law enforcement contacted Hertz Rental Company Corporate Security and confirmed that the 2021 Hyundai Elantra was equipped with a GPS device. A GPS ping at or near 11:45 a.m. identified that the vehicle was stationary at a Motel 6 in Dickson, Tennessee. Subsequent request for a historical ping information showed that the gray Hyundai Elantra had traveled in the area of the aforementioned BOA, which was mapped via GPS as Thompson Lane and Sidco Drive, on June 6, 2022, prior to the ultimate ping in Dickson, Tennessee.

12. Law enforcement then traveled to the Motel 6 in Dickson where they believed the Hyundai Elantra to be parked. Upon their arrival, the gray, four-door Hyundai Elantra was located in the parking lot area along with a red Jeep Cherokee which was consistent with the red Jeep captured on surveillance at the BOA ATM robbery.

13. While under visual surveillance, agents with the FBI observed a male black remove what appeared to be a large metal rectangular box from the gray Hyundai Elantra and put the same rectangular box into the red Jeep.

14. Shortly thereafter, agents with the FBI visually confirmed that two people were inside the red Jeep, and two people were inside the gray Hyundai Elantra. The passenger of the red Jeep made a thumbs up sign to the occupants of the Hyundai Elantra, at which time the passenger of the Hyundai Elantra exited that vehicle and entered the rear of the red Jeep. The red Jeep and gray Hyundai Elantra then pulled out of the Motel 6 parking lot and drove in separate directions. Law enforcement followed both vehicles.

15. The red Jeep pulled into a Pilot Travel Center on Highway 46 South in Dickson, Tennessee, where a traffic stop was conducted. The gray Hunyadi travelled to the area of Dickson near the intersection of East Christy and Suzanne Drive where a traffic stop was conducted on that vehicle as well.

16. The only occupants of the red Jeep were identified as being the driver Sashondra DUGAS, front passenger Darius DUGAS, and rear passenger La'Desion RILEY. The only occupant of the gray Hyundai Elantra was Christopher Alton JEROME.

17. A consent search of the red Jeep Cherokee was granted by Sashondra DUGAS. During this search, two black bags were located in the rear area. One of the bags was black with a mark which resembles the Nike logo and contained $46,080.00. The second back was a dark bag

with shoulder straps and contained $57,098.61. An additional bag, resembling a "Christian Dior" bag, was located in the front passenger floorboard and contained $13,132.00. This additional bag also contained a Texas driver's license in the name of Sashondra Nicole DUGAS, and a second Texas driver's license identifying M.K.[2] (who was not present at the scene of the stop). A total of over $116,000 was recovered from the bags in the vehicle.

18. During the course of this investigation, it was determined that Sashondra DUGAS rented a specific room at the aforementioned Motel 6, on June 6, 2022, at approximately 11:40 a.m. under the name of M.K. using a Texas driver license with the name M.K. which displayed someone else's image and demographic information and was later recovered in the above described "Christian Dior" bag.

19. Surveillance video obtained from Motel 6 management shows Sashondra DUGAS carrying a bag that resembles the "Christian Dior" bag which was later recovered in the red Jeep (containing over $13,000) and entering a specific room at approximately 11:45 a.m. Shortly after her entry, Darius DUGAS, RILEY, and JEROME enter the same room.

20. The surveillance video showed that when RILEY entered that same room, he was carrying a black bag that has a mark which resembles the Nike logo and appears to be the same bag later recovered from the red Jeep (containing over $46,000). On the surveillance video, RILEY can be seen wearing what appears to be the same shoes, pants, and shirt of Robber #2 from the ATM robbery surveillance video.

21. The video showed that when JEROME entered the motel room, he was carrying a dark bag with shoulder straps that appears to be the same bag later recovered in the red Jeep (containing over $57,000). DUGAS entered the room empty handed on the video.

---

[2] The full name was displayed on the drivers' license and is known to me but is redacted here in anticipation of this affidavit becoming public at some point.

22. Subsequent review of the Motel 6 surveillance video showed that when Sashondra DUGAN exited the hotel room at approximately 12:25 p.m., she was again carrying a bag that resembles the "Christian Dior" bag. The video shows her walking to the red Jeep Cherokee; shortly thereafter, the red Jeep Cherokee pulls away. The video shows her return to the room still carrying the "Christian Dior" bag around 12:35 p.m.

23. At approximately 12:56 p.m., the motel surveillance video shows Sashondra DUGAN carrying what appears to be the "Christian Dior" bag as she exits the room; she was followed by JEROME who was empty handed. Shortly thereafter, the video shows RILEY exiting the hotel room and carrying what appears to be the black bag that has a mark which resembles the Nike logo. Darius DUGAS can be seen on video exiting the room with something in his hands as well. At approximately 1:00 p.m., the video shows Darius DUGAS and RILEY behind the red Jeep Cherokee putting bags in rear area of the vehicle. At approximately 1:07 p.m., Darius DUGAS can be seen shutting the rear door of the red Jeep Cherokee. At approximately 1:08 p.m. the red Jeep can be seen pulling away; it was shortly thereafter that law enforcement stopped the vehicle.

24. Based on a review of the BOA surveillance video and comparing it to the surveillance video at the Motel 6, as well as law enforcement observations on scene, I submit that there is probable cause to believe that Robber #1, is Christopher Alton JEROME. The BOA surveillance footage and still photos show the robber's head and face were covered, however Robber #1's hair can be seen extending out of the hoodie on the surveillance footage. The hair of Robber #1 is consistent in color and appearance with JEROME's hair. Furthermore, JEROME's physical build is consistent with Robber #1. Lastly, the aforementioned dark bag with shoulder

straps found in the red Jeep Cherokee (containing over $57,000) is consistent to the dark bag with shoulder straps that JEROME can be seen carrying into the hotel room at Motel 6.

25. Based on a review of the BOA surveillance video and comparing it to the surveillance video at the Motel 6, as well as law enforcement observations on scene, I submit that there is probable cause to believe that Robber #2, is La'Desion RILEY. During the robbery, Robber #2, was wearing a face covering and a black hoodie. However, on the BOA surveillance video, the black undershirt of Robber #2 is exposed in the back and red print can be seen on the back of the shirt. When entering the Motel 6 room on the motel surveillance video, RILEY can be seen wearing what appears to be the same black undershirt with red print, as well as the same shoes, pants, and shirt of Robber #2. Furthermore, RILEY's physical build is consistent with that of Robber #2. Lastly, the aforementioned black bag which has a mark which resembles the Nike logo and was found in the red Jeep Cherokee (and contained over $46,000) is consistent with the bag that the motel surveillance video shows RILEY carrying into the hotel room.

26. Video surveillance from the BOA ATM confirmed that the red Jeep captured in the same robbery surveillance video, during this robbery, was driven by Darius DUGAS with Sashondra DUGAS as the front seat passenger.

27. After the arrest of Sashondra DUGAS in the red Jeep Cherokee, a total of four individual Texas driver's licenses were found. One Texas driver's license appeared to belong to Sashondra DUGAS and appears to bear her picture and information. Three of the Texas driver's licenses had the same image but different demographic and DOB related information. Three social security cards were also recovered matching the driver's licenses found.

28. From my training and experience, I know that individuals who are involved in illegal activity – such as bank robbery – regularly carry and use false identification (such as a

drivers' license belonging to another person) in order to evade detection by law enforcement. For example, individuals involved in illegal activity – such as bank robbery – regularly use false identification to rent hotel rooms in the name of the person on the false identification so as not to leave a trail of their connection to that room.

29. Based on all the aforementioned facts outlined in the affidavit, I believe there is probable cause that Christopher Alton JEROME, La'Desion RILEY, Darius DUGAS, and Sashondra DUGAS robbed the Bank of America located at 645 Thompson Lane, Nashville, Tennessee, on June 6, 2022, in violation of Title 18, United States Code Section 2113(a) and I request that warrants be issued for their arrest.